UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ARBOR GLOBAL STRATEGIES, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.;<br>SAMSUNG ELECTRONICS AMERICA, INC.; and<br>SAMSUNG SEMICONDUCTOR, INC.,<br><br>           Defendants. | Case No. 2:19-cv-00333-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**SAMSUNG'S REPLY IN SUPPORT OF ITS**
**<u>MOTION TO DISMISS FOR LACK OF STANDING</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

I.  PLAINTIFF HAS NOT SHOWN IT HAD STANDING TO BRING THIS LAWSUIT .. 2

   A.  Plaintiff Has Not Shown that the PCA Grants an Automatic Assignment of the Asserted Patents to Arbor Company ....................................................................... 3

   B.  Plaintiff's Characterization of the Transfer as a "Security Interest" Does Not Change the Nature of the Patent Assignment ......................................................... 5

   C.  Plaintiff Has Not Shown that Satisfaction of Arbor Company's Judgments Revested Title to the Asserted Patents in Arbor Company ..................................... 7

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
  626 F.3d 1213 (Fed. Cir. 2010) ............................................................................................5

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010) .........................................................................................2, 4

*Akazawa v. Link New Tech. Int'l, Inc.*,
  520 F.3d 1354 (Fed. Cir. 2008) .........................................................................................8, 9

*Applied Cos. v. United States*,
  144 F.3d 1470 (Fed. Cir. 1998) ............................................................................................8

*Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*,
  570 F.2d 1220 (5th Cir. 1978) ..............................................................................................8

*Craig v. Ponderosa Dev., LP*,
  392 B.R. 683 (E.D. Tex. 2007) .............................................................................................8

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
  93 F.3d 774, *amended on reh'g in part on other grounds*, 104 F.3d 1296 (Fed. Cir. 1996) .....3

*Gerber Sci. Int'l, Inc. v. Satisloh AG*,
  No. 3:07-CV-1382, 2009 WL 10689138 (D. Conn. Sept. 25, 2009) ....................................10

*Gerber Sci. Int'l, Inc. v. Satisloh AG*,
  No. 3:07-CV-1382, 2009 WL 2869705 (D. Conn. Sept. 2, 2009) .........................................10

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
  275 F.3d 1378 (Fed. Cir. 2002) ............................................................................................3

*IP Innovation L.L.C. v. Google, Inc.*,
  661 F. Supp. 2d 659 (E.D. Tex. 2009) ..................................................................................8

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
  109 F.3d 1567 (Fed. Cir. 1997) ............................................................................................8

*Kanematsu Corp. v. Advanced Materials Lanxide, LLC*,
  No. 01-CV-190, 2002 WL 32332375 (D. Del. Sept. 30, 2002) .............................................9

*Kowalski v. Mommy Gina Tuna Res.*,
  No. 05-CV-679, 2008 WL 583553 (D. Haw. Mar. 3, 2008) ..................................................5

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ..............................................................................................................4

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
　925 F.3d 1225 (Fed. Cir. 2019) ............................................................................................5, 6, 9

*Luv N' Care, Ltd. v. Groupo Rimar*,
　844 F.3d 442 (5th Cir. 2016) ......................................................................................................3, 4

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
　676 F. App'x 967 (Fed. Cir. 2017) ................................................................................................3

*Roswell Capital Partners LLC. v. Beshara*,
　436 F. App'x 34 (2d Cir. 2011) .....................................................................................................8

*Secure Axcess, LLC v. Dell, Inc.*,
　No. 6:11-CV-338, 2012 WL 12919544 (E.D. Tex. Sept. 24, 2012) ..........................................9

*Textile Prods., Inc. v. Mead Corp.*,
　134 F.3d 1481 (Fed. Cir. 1998) ................................................................................................2, 3

*Waterman v. Mackenzie*,
　138 U.S. 252 (1891) ................................................................................................................9, 10

**Statutes**

35 U.S.C. § 100(d) ...............................................................................................................................8

35 U.S.C. § 261 ....................................................................................................................................3

Nevada UCC § 9-502(a) .....................................................................................................................7

## **INTRODUCTION**

Patent standing is an issue of threshold importance, one that cannot be treated with a close-enough, "horseshoes and hand grenades" level of analysis. Yet, Plaintiff Arbor Global Strategies, LLC lays out just that in its opposition. What Plaintiff fails to provide, however, is a response that addresses the ***actual language*** of the contracts. It instead recites various, unremarkable pieces of law about security interests terminating when secured debts are repaid, and makes speculative statements about the parties' intent in negotiating the agreements at issue.

First, it argues that the satisfaction of judgment was all that was needed to reconvey the patents to Arbor Company, because the whole point was merely to secure the judgment. Yet, Plaintiff must have realized that its argument contradicts the governing contractual language, because it then points to a single release by one of the patent assignees, Mark Guzy, as being dispositive (Plaintiff is silent as to why it chose not to provide this document, which it has apparently had since June of 2019, when asked by Samsung prior to filing its motion). It apparently has no such release from the other assignee, Mary Ann Guzy. None of this is enough under the contract conveying the patent rights.

It takes little penetration to understand why Plaintiff downplays the contract language. Indisputably, that language required a three-step mechanism governing any potential return of the patents: (1) filing a satisfaction of judgment; (2) executing a release in a mutually agreed form; and (3) executing paperwork needed to "revest" (i.e., assign) the patents back to Arbor Company. As to (1), Plaintiff admits the requirement. Plaintiff knows that (2) is true too, given how much stock it puts in the belated release from Mark Guzy.

As to (3), Plaintiff has no shred of proof (no executed assignments, no Patent Office recordations, no declarations from the assignees), and therefore is left to argue interpretations of

the contract that contradict the plain language of its terms.  Lacking this fundamental proof of standing, Plaintiff contends that the assignments are simply niceties with which it need not comply.  That is not the law, and Plaintiff has failed to make the required showing of standing.  Accordingly, its lawsuit against Samsung is ripe for dismissal with prejudice.

**I.     PLAINTIFF HAS NOT SHOWN IT HAD STANDING TO BRING THIS LAWSUIT**

By the express terms of the PCA, Arbor Company "**grant[ed], assign[ed],** and **convey[ed]**" to Mary Ann and Mark Guzy:

- "the **entire right, title and interest** in and to the Patents[-in-Suit]";
- "the **right to sue** for past, present and future infringements"; and
- "**all rights** corresponding thereto throughout the world and all reissues, divisions, continuations, renewals, extensions and continuations-in-part."

ECF 22-10 (Rawson Decl., Ex. 9 (Patent Collateral Assignment) at 0205, (emphases added).  This was not a mere security interest, as Mary Ann and Mark Guzy were given all of the rights a patentee could possess:  ownership, enforcement, and related patents.  Despite this, Plaintiff insists on stopping short of calling it an assignment.  However characterized, Plaintiff still has not provided any document "granting," "assigning," or "conveying" these rights from Mary Ann and Mark Guzy to any other party, and its lawsuit against Samsung is ripe for dismissal with prejudice.[1]

---

[1] It is well established that Article III standing cannot be cured retroactively.  *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366–67 n.4 (Fed. Cir. 2010).  The record here also supports dismissal with prejudice because Plaintiff's failure to obtain a valid assignment for years prior to finally filing this lawsuit shows that it is unlikely that it will ever be able to cure the standing problem.  *See Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) (affirming dismissal *with prejudice* because plaintiff "had its chance to show standing and failed," where plaintiff would have been required to negotiate with a hostile party to acquire

### A. Plaintiff Has Not Shown that the PCA Grants an Automatic Assignment of the Asserted Patents to Arbor Company

The PCA does not provide any mechanism for "automatic" assignment of title from Mary Ann and Mark Guzy back to Arbor Company. Had automatic reversion been a term of the PCA, it would have said so.[2] Instead, the PCA outlines three affirmative steps to be taken by Mary Ann and Mark Guzy to revest title to the patents in Arbor Company: (1) filing a satisfaction of judgment; (2) executing a release in a mutually agreed form; and (3) executing paperwork needed to "revest" (i.e., assign) the patents back to Arbor Company. ECF 22 ("Motion") at 14–19. Holding otherwise would render meaningless the terms mutually agreed upon by the parties and violate one of the basic tenets of contract interpretation. *See Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016) (reversing the district court for not giving effect to all of the plain terms of a contract). These provisions of the PCA have not been satisfied.

**The PCA, without a separate assignment, is merely a promise to assign.** As to the last step—the precise, contractually-mandated paperwork needed to "revest" (i.e., assign) the patents back to Arbor Company—this is needed because of the structure of the PCA itself. The

---

legal rights to be considered a patentee); *see also H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1385 (Fed. Cir. 2002) (discussing *Textile Prods.*, 134 F.3d at 1485)). This case also warrants dismissal with prejudice because Plaintiff and its privies have weaved a "web of confusion" around the ownership of the asserted patents by asserting sole ownership in this and other litigation, failing to produce a valid written assignment, recording the purported "security interest" signed only by Arbor Company and multiple invalid assignments with the PTO, and attempting to unilaterally alter the terms of the PCA. *See e.g., Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 972 (Fed. Cir. 2017). Further, "[p]ermitting non-owners [such as Plaintiff] and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation[s], and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation." *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780, *amended on reh'g in part on other grounds*, 104 F.3d 1296 (Fed. Cir. 1996).

[2] According to 35 U.S.C. § 261, "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." The PCA does not provide for an automatic reassignment of the patents and no written assignment back to Arbor Company has been produced by the Plaintiff.

PCA includes a mere promise to transfer, not an automatic transfer. Specifically, the PCA states "[a]t such time as Assignee executes the Release" the "Assignee shall execute and deliver to Assignor all deeds, assignments and other instruments as may be necessary or proper to re-vest in Assignor full title to the Patents, subject to any disposition thereof which may have been made by Assignee pursuant hereto." ECF 22-10 at 0206 ¶ 8. A contractual provision that states a person "shall execute and deliver" "reflects a mere promise to assign rights in the future, not an immediate transfer of expectant interests." *Abraxis*, 625 F.3d at 1365. That is, "[c]ontracts that obligate the owner to grant rights in the future do not vest legal title to the patents." *Id.* Here, no such assignment of rights back to Arbor Company has occurred.

**Plaintiff misreads the PCA's requirements.** Plaintiff's argument that the PCA creates an automatic transfer because the PCA states that "other instruments . . . *may be* necessary or proper to revest in Assignor full title to the Patents" is incorrect. *See* Opp. at 9. When read in context of the paragraph in which it is written, the phrase "**Assignee shall execute and deliver** to Assignor **all deeds, assignments and other instruments as may be necessary or proper to re-vest** in Assignor full title to the Patents" does not make such deeds, assignments, and other instruments optional. Rather, it states that the Assignee has a future obligation to execute the necessary documents to revest title in Arbor Company. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall,' . . . normally creates an obligation impervious to judicial discretion.") Any other reading of this provision cannot be squared with the principles of contract law as it would make this provision entirely unnecessary. *See Luv N' Care*, 844 F.3d at 447.

4

### B. Plaintiff's Characterization of the Transfer as a "Security Interest" Does Not Change the Nature of the Patent Assignment

Plaintiff's characterization of the assignment as a "security interest" that, upon satisfaction, automatically caused the patents to revert is incorrect, given the contractual context. The substance of the conveyance controls, not the label given by the Plaintiff. That substance is defined by the express language of the contracts.

First, the nature of a conveyance depends on the substance of what was granted—here a conveyance of the entire right, title and interest. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (considering whether an agreement was an assignment, and holding that the "inquiry depends on the substance of what was granted"). As discussed *supra*, there is no language in the PCA itself that effected anything less than the immediate conveyance of *all* rights to Mary Ann and Mark Guzy upon execution of that agreement. Indeed, the PCA specifically conveyed the "right to sue" for past, present, and future infringement that does not result from conveyance of a "mere security interest." *See, e.g., Kowalski v. Mommy Gina Tuna Res.*, No. 05-CV-679, 2008 WL 583553, at *3 (D. Haw. Mar. 3, 2008) ("[A] security interest [is] not a present ownership interest . . . . Without an ownership interest in the patent itself, [a person] does not now have, nor has . . . ever had, the right to sue others for infringement . . . .").

Second, that Arbor Company labeled the PCA as a "Security Agreement" when submitting the document to the Patent Office is of no moment. Arbor Company's characterization does not overcome the effect of the language in the agreement itself, which unambiguously transferred the entire right, title, and interest in the asserted patents. *See A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1218 (Fed. Cir. 2010) ("In determining ownership for purposes of standing, labels given by the parties do not control. Rather, the court must

5

determine whether the party alleging effective ownership has in fact received all substantial rights from the patent owner."); *Lone Star*, 925 F.3d at 1230 ("Our analysis in these types of cases has never been so reliant on labels.").

Third, that the PTO recorded the PCA as a "Security Agreement" is not controlling. Assignment documents submitted to the PTO must be accompanied by a cover sheet that contains a description of the interest conveyed. *See* 37 C.F.R. §§ 3.28 and 3.31(a)(3). The assignment document is classified by the party submitting the document, not the PTO, and any document that meets the minimum requirements set forth in 37 C.F.R. § 3 is processed and recorded.[3]

Fourth, although Arbor Company recorded the PCA along with a separate document entitled "Notice of Security Interest in U.S. Patents," this separate document does not affect the transfer. Nothing in this accompanying document states that the PCA did not effect a transfer of title to the asserted patents. Moreover, this accompanying document was signed only by D. James Guzy on behalf of Arbor Company, ***not*** Mary Ann or Mark Guzy.[4] ECF 22-10 at 0202–04.

---

[3] *See* Transferring Ownership/Assignments FAQs, United States Patent and Trademark Office, https://www.uspto.gov/learning-and-resources/transferring-ownership-assignments-faqs (last visited Feb. 25, 2020) ("Is the Assignment Document read? No. Everything required for the public record is transcribed from the cover sheet; Are documents submitted for recordation examined? No. All documents that meet the minimum requirements outlined in 37 C.F.R. § 3 are processed and recorded.") Plaintiff could have submitted a copy of last Monday's newspaper with a PTO cover sheet calling it a "security interest," and the PTO would have recorded it as such.

[4] According to its terms, the PCA can only be modified by a writing signed by all parties with the exception of amending Schedule A to include any continuing patents or patent applications. ECF 22-10 at 207 ¶ 15. The "Notice of Security Interest in U.S. Patents" is not signed by Mary Ann or Mark Guzy and therefore cannot modify the terms of the PCA.

Fifth, Mary Ann and Mark Guzy's filing of UCC-1 financing statements in California and Nevada does not support Plaintiff's assertion that they possessed a mere security interest to the patents. Indeed, UCC § 9-502(a) states that "a financing statement is sufficient **only if it**: . . . (3) **indicates the collateral** covered by the financing statement." Here, neither of the financing statements purportedly filed by Mary Ann and Mark Guzy mentions the PCA or any other document describing intellectual property conveyed as a security interest. In fact, the financing statements merely refer to "certain consumer goods, personal property, artwork, antiques and jewelry," not intellectual property, let alone the asserted patents. *E.g.*, ECF No. 26-2 (Kastens Decl., Ex. 2 (Nevada UCC Record)).

### C. Plaintiff Has Not Shown that Satisfaction of Arbor Company's Judgments Revested Title to the Asserted Patents in Arbor Company

Plaintiff incorrectly posits that "as of August 1, 2019 at the latest, neither Mary Ann nor Mark had any rights whatsoever in the Asserted Patents." Opp. at 4. All that was extinguished at that time were the liens against Arbor Company. Although Arbor Company purportedly satisfied its debt obligations, the language of the mutually agreed upon terms of the PCA makes clear that the parties intended the patent rights to remain with Mary Ann and Mark Guzy until they take affirmative action to assign the patents back to Arbor Company.

First, the terms of the PCA do not provide for the patents to automatically revert back to Arbor Company upon satisfaction of the judgments against Arbor Company, or even upon execution of a release. *See* ECF 22-10. Accordingly, Plaintiff's production of documents purportedly showing that Mark Guzy filed a Satisfaction of Judgment and executed a release, is beside the point. There is no evidence that Mark Guzy assigned any patent rights back to Arbor Company. Further, Plaintiff's citation of an order by a state court entering a satisfaction of judgment against Mary Ann Guzy, is also not enough. That court did not order a transfer of

7

Mary Ann's rights to the asserted patents. Plaintiff cites no authority to support its assertion that "while Mary Ann failed to [execute a release], the court's Order in the State Court Action has the same effect." Opp. at 9. Nor does the state court's order indicate that, by operation of law, its order is a substitute for a release or a reassignment of patent rights as required by the PCA—and as would be required to assert a claim of ownership. *See Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997). And, there is not even a scintilla of evidence that the state court intended to rewrite the parties' agreements.

Second, while Plaintiff contends that "this security interest was extinguished as a matter of law when the debt was repaid," it cites no law to support its contention that, as a matter of law and regardless of its terms, a *patent assignment* that transferred full title in a patent is automatically extinguished upon payment of a debt. Instead, Plaintiff relies on a glut of cases unrelated to patent assignments and patent law that discuss generic assignments, security interests, and liens.[5] But "[t]he term 'assignment' has a particular meaning in patent law, implying a formal transfer of title to the patent-in-suit." *IP Innovation L.L.C. v. Google, Inc.*, 661 F. Supp. 2d 659, 663 (E.D. Tex. 2009) (citing 35 U.S.C. § 100(d)). These cases therefore do not support Plaintiff's contentions.

Third, the patent law cases Plaintiff cites fare no better than the non-patent ones. In *Akazawa*, the Federal Circuit held that Japanese intestacy law should control ownership of the

---

[5] *Applied Cos. v. United States*, 144 F.3d 1470, 1476 (Fed. Cir. 1998) (relating to a government contractor's assignment of amounts owed by the government to a bank); *Bank of Lexington v. Jack Adams Aircraft Sales, Inc.*, 570 F.2d 1220, 1224–25 (5th Cir. 1978) (relating to a bank held security interest in an airplane); *Roswell Capital Partners LLC. v. Beshara*, 436 F. App'x 34, 35 (2d Cir. 2011) (relating to general security interests and mandatory debt-to-equity conversion of shares in a company to secure lenders); *Craig v. Ponderosa Dev., LP,* 392 B.R. 683, 689 (E.D. Tex. 2007) (relating to a deed of trust on real property that contained a "dragnet clause.")

8

asserted patent after the sole named inventor died without an executed will; in that particular circumstance, a written assignment from the inventor's estate was not required. *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1356 (Fed. Cir. 2008). *Akazawa* does not support Plaintiff's assertion that the Court should ignore the terms of a written patent assignment that expressly requires satisfaction of certain conditions and a separate assignment or instrument to transfer title back to the assignor.

Similarly, Plaintiff's position finds no support in *Kanematsu Corp. v. Advanced Materials Lanxide, LLC,* No. 01-CV-190, 2002 WL 32332375, at *6 (D. Del. Sept. 30, 2002). The district court in that case held that a security interest granted to a plaintiff by a "security interest agreement" terminated after the underlying debt was extinguished. *Id.* Unlike this case, however, in *Kanematsu*, the "plain language of the [agreement]" in question—granting 'a first and prior security interest in all of LTC's Japanese patents'"—made it clear that the agreement granted merely a security interest or lien to secure payment of a loan and did not grant full title in the patents or assign any patent rights at all. *Id.* at *2, 6.

Fourth, Plaintiff's attempt to diminish long-standing Supreme Court precedent as "outdated" is misplaced. The Federal Circuit and this Court continue to rely on *Waterman v. Mackenzie,* 138 U.S. 252, 260 (1891), with regularity for the proposition that the court must examine the substance of an agreement transferring patent rights to determine what rights it granted, not "formalities or magic words." *See e.g., Lone Star*, 925 F.3d at 1229; *Secure Axcess, LLC v. Dell, Inc.,* No. 6:11-CV-338, 2012 WL 12919544, at *2 (E.D. Tex. Sept. 24, 2012).

9

*Waterman* also makes clear that a patent assignment is more than a mere lien or security interest; "at law and in equity, the *whole title* is transferred."[6] 138 U.S. at 258 (emphasis added).

Fifth, Plaintiff has identified no case that supports its contention that characterizing a patent assignment as a "security interest" creates an automatic reversion of the assigned rights when a debt is repaid and the "security interest" is "extinguished."[7] Here, by the PCA's own terms, whether or not a security interest was extinguished is irrelevant to the ownership of the patents. To transfer the patent rights, Mary Ann and Mark Guzy must execute a separate instrument to transfer patent ownership. They never have.

## CONCLUSION

The plaintiff in this case does not own the asserted patents. Because it does not, Plaintiff fails to meet its burden to show it has the requisite standing and rights to bring this suit. Samsung therefore respectfully requests that this case be dismissed with prejudice under Rule 12(b)(1) and/or 12(b)(6).

---

[6] Plaintiff argues that the cases cited by Samsung in its motion are inapposite because none involved a "patent collateral assignment." As explained herein, the label of the PCA does not control. Thus, the cases cited by Samsung, which dealt with what, if any, rights were assigned by the terms of the agreements in question, are highly relevant to the standing question here.

[7] Plaintiff relies on *Gerber Sci. Int'l, Inc. v. Satisloh AG,* No. 3:07-CV-1382, 2009 WL 2869705, at *5 (D. Conn. Sept. 2, 2009), for the proposition that no instruments were required to revest title to the asserted patents in Arbor Company. *Gerber* is not controlling and inapposite. In *Gerber*, the executed agreement contained language that the "[a]ssignment shall terminate" when the debt was paid. *Id*. at *6. Here, there is no such language. Also, *Gerber* was never reviewed by the Federal Circuit. *See Gerber Sci. Int'l, Inc. v. Satisloh AG*, No. 3:07-CV-1382, 2009 WL 10689138, at *1 (D. Conn. Sept. 25, 2009), *adhered to on reconsideration,* No. 3:07-CV-1382, 2009 WL 10689139 (D. Conn. Oct. 9, 2009).

| | |
|---|---|
| Date: February 27, 2020 | Respectfully submitted, |
| | /s/ *Francis J. Albert* |

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Indranil Mukerji
MA Bar 644059
mukerji@fr.com
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile:  (202) 783-2331

Francis J. Albert
CA Bar No. 247741
albert@fr.com
Timothy J. Rawson
CA Bar No. 304755
rawson@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real, Suite 100
San Diego, CA  92130
Telephone: (858) 678-5070
Facsimile: (858) 378-5099

Anthony V. Nguyen
TX Bar No. 24083565
nguyen@fr.com
FISH & RICHARDSON P.C.
1221 McKinney Street, Ste. 2800
Houston, TX 77010
Telephone: (713) 654-5300
Facsimile:  (713) 652-0109

Melissa Richards Smith
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

11

*Attorneys for Defendants Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; and Samsung Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on February 27, 2020.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by email.

/s/ <i>Francis J. Albert</i>