# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ARBOR GLOBAL STRATEGIES LLC, | Case No. 2:19-cv-00333-JRG-RSP |
| Plaintiff, | |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; and SAMSUNG SEMICONDUCTOR, INC., | |
| Defendants. | |

**ARBOR GLOBAL STRATEGIES LLC'S SUR-REPLY IN OPPOSITION TO SAMSUNG DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING**

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. Satisfaction of the Judgments Automatically Extinguished Any and All Rights Conveyed by the Patent Collateral Assignment by Operation of Law ........ 1

    B. The Patent Collateral Assignment Conveyed a Mere Collateral Security Interest in the Asserted Patents ............................................................................. 3

    C. The Plain Terms of the PCA Do Not Require Execution of Additional Instruments to "Revest" Title ................................................................................ 5

    D. Defendants Wrongly Argue the Complaint should be Dismissed With Prejudice ...................................................................................................... 7

III. CONCLUSION ..................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akazawa v. Link New Tech. Int'l, Inc.*,
   520 F.3d 1354 (Fed. Cir. 2008)..................................................................................................2

*Baisden v. I'm Ready Prods., Inc.*,
   693 F.3d 491 (5th Cir. 2012) .....................................................................................................6

*Commonwealth Sci. & Indus. Research Organisation v. Lenovo
   (United States), Inc.*,
   No. 6:09CV399, 2011 WL 13221068 (E.D. Tex. Oct. 31, 2011)..............................................4

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   No. 2:14-CV-911-JRG-RSP, 2015 WL 5786501 (E.D. Tex. Sept. 30, 2015)...........................7

*Fed. Deposit Ins. Corp. v. Bracero & Rivera, Inc.*,
   895 F.2d 824 (1st Cir. 1990)......................................................................................................2

*Gerber Sci. Int'l, Inc. v. Satisloh AG*,
   No. 3:07CV1382 (PCD), 2009 WL 2869705 (D. Conn. Sept. 2, 2009)....................................6

*Gillaspy v. Dallas Indep. School Dist.*,
   278 F.Appx. 307 (5th. Cir. 2008)...............................................................................................7

*IP Innovation L.L.C. v. Google, Inc.*,
   661 F.Supp.2d 659 (E.D. Tex. 2009)........................................................................................2

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
   109 F.3d 1567 (Fed. Cir. 1997)..............................................................................................3, 5

*Kanematsu Corp. v. Advanced Materials Lanxide, LLC*,
   No. Civ. A. 01-190-JJF, 2002 WL 32332375 (D. Del. Sept. 30, 2002) ....................................3

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
   676 Fed.Appx. 967 (Fed. Cir. 2017).........................................................................................7

*Peteet v. Dow Chem. Co.*,
   868 F.2d 1428 (5th. Cir. 1989) ..................................................................................................7

*Sky Techs. LLC v. SAP AG*,
   No. 2:06-CV-440 (DF), 2008 WL 5234644 (E.D. Tex. June 4, 2008).....................................2

*State Bank & Tr. Co. of Golden Meadow v. Boat D.J. Griffin*,
   755 F.Supp. 1389 (E.D. La. 1991)............................................................................................2


*Univ. of Pittsburgh v. Varian Med. Sys., Inc.*,
  569 F.3d 1328 (Fed. Cir. 2009).........................................................................................7

*Venetian Blind & Floor Covering, Ltd. v. Wells Fargo Bank, N.A.*,
  No. H-08-2451, 2010 WL 55978 (S.D. Tex. Jan. 4, 2010).................................................7

**Federal Statutes**

35 U.S.C.§ 261 .................................................................................................................5

Plaintiff respectfully submits this sur-reply in further opposition to Defendants' motion to dismiss the Complaint for lack of standing (Dkt. 22).[1]

## I. INTRODUCTION

Far from advancing their arguments, Defendants' reply underscores that the instant motion is entirely without merit. To contrive their arguments, Defendants ignore the legal distinctions between a patent assignment and patent collateral assignment, and further ignore the plain terms of the Settlement Agreement and PCA expressly conveying rights in the Asserted Patents to Mark and Mary Ann solely "to secure satisfaction" of the Judgments.

In sum, it is axiomatic that any and all interest Mark and Mary Ann had in the Asserted Patents was extinguished by operation of law when the Judgments were fully paid—well in advance of the filing of the Complaint in this action. Thus, Plaintiff has standing and Defendants' motion to dismiss should be denied in its entirety.

## II. ARGUMENT

### A. Satisfaction of the Judgments Automatically Extinguished Any and All Rights Conveyed by the Patent Collateral Assignment by Operation of Law

Defendants concede (Dkt. 27 at 1) that security interests are extinguished by operation of law when the underlying debt is repaid. Defendants also concede (*id*. at 7) that the Judgments were satisfied and Arbor Company's debts to Mark and Mary Ann are extinguished. Accordingly, there can be no credible dispute that any and all interest Mark and Mary Ann had in the Asserted Patents was extinguished by operation of law. *See* Opp. Br. 5-6.

Defendants suggest that patents are different from other collateral because the term "assignment" in patent law transfers of title. Dkt. 27 ("Def. Reply Br.") at 8. Setting aside the

---

[1] Terms defined in Plaintiff's opposition brief (Dkt. 26) ("Opp. Br.") have the same meaning herein.

fact that Defendants' argument ignores the terms of the PCA (*infra* pp. 3-4), this is a distinction without a difference. As demonstrated in Plaintiff's opposition brief—and as Defendants do not dispute—even where full title is transferred as collateral, satisfaction of the underlying debt revests title in the debtor by operation of law. Opp. Br. 5-6 (and cases cited therein). *See also Fed. Deposit Ins. Corp. v. Bracero & Rivera, Inc.*, 895 F.2d 824, 827 (1st Cir. 1990) ("The mortgage which guaranteed the debt was a subsidiary or accessory obligation to the underlying debt. Consequently, the mortgage itself was also extinguished when the principal debt was paid."); *State Bank & Tr. Co. of Golden Meadow v. Boat D.J. Griffin*, 755 F.Supp. 1389, 1398 (E.D. La. 1991) ("when the mortgage is for a specific debt, payment extinguishes debt and mortgage"). The one case Defendants cite on this point is not to the contrary. In *IP Innovation L.L.C. v. Google, Inc.*, the court discussed the difference between an assignment and a mere license, but did not address the difference between an absolute assignment and an collateral assignment, nor did it hold that title to patents cannot revest by operation of law. 661 F.Supp.2d 659, 663 (E.D. Tex. 2009).

Defendants attempt to distinguish *Akazawa v. Link New Tech. Int'l, Inc.* as limited to the intestacy context, but do not seriously dispute that "ownership of a patent may be changed by operation of law." 520 F.3d 1354, 1356 (Fed. Cir. 2008). *See* Def. Reply Br. 8-9. Courts have consistently cited *Akazawa* for precisely this proposition. *See, e.g.*, *Sky Techs. LLC v. SAP AG*, No. 2:06-CV-440 (DF), 2008 WL 5234644, at *11 (E.D. Tex. June 4, 2008) (in patent foreclosure context, citing *Akazawa* and holding that "a writing is not required to transfer title, rather, title may pass by operation of law"). And in fact, the cases Defendants themselves cite consistently hold that a separate writing is not uniformly required to change ownership of a

patent. *See, e.g.*, *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997) (an assignment "may be declared null and void by operation of law").

Defendants' attempt to distinguish *Kanematsu Corp. v. Advanced Materials Lanxide, LLC,* fares no better. No. Civ. A. 01-190-JJF, 2002 WL 32332375, at *6 (D. Del. Sept. 30, 2002). Defendants argue that in *Kanematsu*, the plain language of the agreement "made it clear that the agreement granted merely a security interest . . . ." Def. Reply Br. 9. But that is precisely what the PCA did here. The PCA expressly grants patent rights solely "[t]o secure satisfaction of [the Judgments]" (Dkt. 22-9, Ex. 8 at Frame: 0205, PCA § 1)—a fact that Defendants notably ignore.

      **B.**    **The Patent Collateral Assignment Conveyed a Mere Collateral Security Interest in the Asserted Patents**

In maintaining that the PCA is equivalent to a regular patent assignment conveying "full title," Defendants accuse Plaintiff of ignoring "the actual language of the contracts." Def. Reply Br. 1. In fact, the converse is true. Defendants urge the Court to ignore the substance of the Settlement Agreement and the PCA by characterizing their controlling language as mere "labels." *See id.* at 5-6, 10 n.6.

The plain language of the Settlement Agreement and the PCA—which Defendants ignore—make clear that the patent rights were conveyed as security interests. Tellingly, Defendants' brief is completely silent on the fact that by its terms the PCA granted patent rights solely "**[t]o secure satisfaction** of [the Judgments]." Dkt. 22-9, Ex. 8 at Frame: 0205, PCA § 1. Defendants likewise ignore the fact that the Settlement Agreement repeatedly states that the PCA is a security interest. *See* Opp. Br. 2-3; Dkt. 22-3, Ex. 2 at §§ VIII (listing the "Patent Collateral Assignment" as one of several "**Security Interests**"), *id*. at IX(E) ("**Security Agreements**. The parties hereto shall have executed all of the agreements and filed any documents required to

3

perfect the **security interests** set forth in Article VIII of this Agreement"), *id*. at X(D) ("Mary Ann . . . shall file all documents necessary and appropriate to terminate **security interests** and deeds of trust in her favor which were granted pursuant to this Agreement.").[2]

These are not mere "labels" as Defendants conclusorily assert.  They are the operative and controlling terms of the agreements and show that the PCA conveys only a collateral security interest, notwithstanding the purportedly "absolute terms" of the assignment reiterated by Defendants.  Def. Reply Br. 2.  Indeed, Plaintiff has no answer to Defendants' cases finding that assignments given as collateral security are commensurate with the debt secured notwithstanding contractual language phrasing assignment "in absolute terms." Opp. Br. 7 (and cases cited therein).

Defendants do not dispute that a UCC-1 financing statement is not necessary if a party holds full ownership of a patent.  *Id*. 8.  Instead, Defendants urge the Court to ignore the UCC-1 financing statements filed by Mary Ann and Mark Guzy to perfect their security interests in the Asserted Patents and other of Arbor Company's property, claiming that these financing statements refer only to security interests in "certain consumer goods, personal property, artwork, antiques and jewelry," and do not include the Asserted Patents.  Def. Reply Br. 7 (citing Dkt. 26-2, Ex. 2).  But this is simply incorrect.  The term "personal property" straightforwardly encompasses the Asserted Patents.  *See, e.g.*, *Commonwealth Sci. & Indus. Research Organisation v. Lenovo (United States), Inc.*, No. 6:09CV399, 2011 WL 13221068, at *2 (E.D. Tex. Oct. 31, 2011) ("A patent is an item of personal property and is freely transferable."); *see*

---

[2]  Defendants also fail to address Mark's Release, which identified his interest in the Asserted Patents as solely a "**security interest and/or lien**." Dkt. 26-4, Ex. 3 (Emergency Motion at Ex. 8).

*also* 35 U.S.C. § 261 ("Subject to the provisions of this title, patents shall have the attributes of personal property.").

### C. The Plain Terms of the PCA Do Not Require Execution of Additional Instruments to "Revest" Title

Defendants ignore the fact that full payment of the Judgments extinguished any and all rights conveyed by the PCA as a matter of law, and wrongly insist that the terms of the PCA required "other instruments" to revest title of the Asserted Patents in Arbor Company.

Defendants argue that the PCA and Settlement Agreement required Mark and Mary Ann to file a Satisfaction of Judgment and a Release. But Defendants do not dispute that Mark executed these documents, and "formally release[d] and discharge[d] any and all security interest and/or lien granted in [his] favor . . . in connection with [the Asserted Patents]." Dkt. 22-14, Ex. 13 at 1; Dkt. 26-4, Ex. 3 (Emergency Motion at Ex. 8). Remarkably, Defendants assert that a court Order granting a motion to extinguish Mary Ann's liens against "patents owned by Arbor Company" (Opp. Br. 4) is somehow insufficient to effectuate a release of her liens on those patents. Def. Reply Br. 8. Defendants' suggestion that a court order lacks the force and effect of a legal release is not well-taken.[3]

Defendants further claim that there is "precise, contractually-mandated paperwork needed to 'revest' (i.e., assign) the patents back to Arbor Company." Def. Reply Br. 3. But this is a fiction. The PCA states only that "Assignee shall execute and deliver to Assignor all deeds, assignments and other instruments *as may be necessary or proper* to re-vest in Assignor full title

---

[3] *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, which concerned a patent assignment and not a patent collateral assignment, does not support Defendants' arguments. 109 F.3d 1567 (Fed. Cir. 1997). In that case, the court rejected plaintiff's argument that breach of assignment agreements automatically rendered the assignments null and void, but recognized that an assignment "may be declared null and void by operation of law—either through a forfeiture provision . . . or under a provision of applicable state law . . . ." *Id.* at 1577.

to the Patents . . . ." Dkt. 22-9, Ex. 8 at Frame: 0206, PCA § 8 (emphasis added). Defendants' contend that the word "shall" in this section creates an immutable future obligation to execute and deliver specific instruments, but ignore that the words "as *may* be necessary" renders this obligation merely conditional. Defendants' reading simply cannot be squared with the canon of contractual interpretation that use of the term "may" is permissive. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 502 (5th Cir. 2012). Thus read in its entirety, this provision does *not* state that any particular instruments are in fact necessary, but only that if such instruments are necessary, then Assignee must execute and deliver them. *See Gerber Sci. Int'l, Inc. v. Satisloh AG*, No. 3:07CV1382 (PCD), 2009 WL 2869705, at *5 (D. Conn. Sept. 2, 2009) (the "use of 'may' implies that deeds or assignments might not be necessary to re-transfer the patents and the clause merely records the party financially responsible should documentation be needed. Therefore, this lack of documentation does not prove that [assignee] maintains ownership of the [patent].").[4] Here, such separate instruments were unnecessary for the reasons set forth above and in Plaintiff's opposition brief.

Indeed, Defendants' attempt to characterize the PCA as a mere "agreement to assign" requiring a further conveyance (Def. Reply Br. 3-4) is based on the incorrect premise that the PCA is legally identical to a patent assignment and ignores the express terms of the PCA conveying rights solely "**to secure satisfaction**" of the Judgments. Dkt. 22-9, Ex. 8 at Frame: 205, PCA § 1.

---

[4] Notably, in attempting to distinguish *Gerber* (Def. Reply Br. at 10 n.7), Defendants do not dispute the *Gerber* court's reading of the term "may." Instead, Defendants point out that the agreement at issue in *Gerber* had an additional term not present in the PCA, which says nothing about this issue. Defendants also misleadingly observe that *Gerber* was not reviewed by the Federal Circuit, but fail to state that the issues on review were unrelated to the court's reading of "may."

### D. Defendants Wrongly Argue the Complaint should be Dismissed With Prejudice

Defendants argue for the first time in reply (in a footnote (at 2-3 n.1)) that its motion should be granted with prejudice. "This court is not obligated to consider a new ground for relief raised in defendant's reply." *Venetian Blind & Floor Covering, Ltd. v. Wells Fargo Bank, N.A.*, No. H-08-2451, 2010 WL 55978, at *1 (S.D. Tex. Jan. 4, 2010) (citing *Gillaspy v. Dallas Indep. School Dist.*, 278 F.Appx. 307, *7 (5th Cir. 2008); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989)); *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-911-JRG-RSP, 2015 WL 5786501, at *5 (E.D. Tex. Sept. 30, 2015) ("The Court does not consider arguments raised for the first time in a reply brief."). Moreover, if the Court is inclined to grant Defendants' motion—it certainly should not—any dismissal for lack of standing should be without prejudice. "[T]he law universally disfavors dismissing an action with prejudice based on lack of standing, and there is a strong presumption that such a dismissal is improper." *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332-33 (Fed. Cir. 2009)  And this case bears no resemblance to the exceptional circumstances at issue in Defendants' cases where dismissal with prejudice may be justified, e.g., because plaintiff had engaged in "a pattern of highly questionable conduct," "made numerous conflicting representations," and failed to explain "'blatant inconsistencies' in its previous positions on standing" in other related cases. *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 Fed.Appx. 967, 971-72 (Fed. Cir. 2017) (recognizing that "[o]rdinarily, dismissal for lack of standing is without prejudice").

### III. CONCLUSION

At least for the reasons set forth herein and in Plaintiff's opposition brief, Defendants' motion to dismiss should be denied because Arbor Global has constitutional and statutory standing.

Respectfully submitted,

Dated: March 6, 2020

*s/ Elizabeth L. DeRieux*
Elizabeth L. DeRieux
Texas Bar No. 05770585
ederieux@capshawlaw.com
Capshaw DeRieux LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: (903) 845-5770

Paul J. Andre
California Bar No. 196585
Lisa Kobialka
California Bar No. 191404
James Hannah
California Bar No. 237978
Kristopher Kastens
California Bar No. 254797
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com

Jonathan S. Caplan
Marcus A. Colucci
KRAMER LEVIN NAFTALIS  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100
jcaplan@kramerlevin.com
mcolucci@kramerlevin.com

*Attorneys for Plaintiff*
Arbor Global Strategies LLC

8